ALAN A. GREENBERG, State Bar No. 150827
  *AGreenberg@GGTrialLaw.com*
WAYNE R. GROSS, State Bar No. 138828
  *WGross@GGTrialLaw.com*
EVAN C. BORGES, State Bar No. 128706
  *Eborges@GGTrialLaw.com*
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1750
Costa Mesa, CA 92626
Telephone:  (949) 383-2800
Facsimile:   (949) 383-2801

DANIEL S. ROBINSON, State Bar No. 244245
  *drobinson@robinsonfirm.com*
WESLEY K. POLISCHUK, State Bar No. 254121
  *wpolischuk@robinsonfirm.com*
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, CA 92660
Telephone:  (949) 720-1288
Facsimile:   (949) 720-1292

*Attorneys for Plaintiffs Sheri Dodge, Neil Dodge,
Ram Agrawal, Sarita Agrawal and All Others
Similarly Situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERI DODGE and NEIL DODGE, and RAM AGRAWAL and SARITA AGRAWAL, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> PHH CORPORATION, a Maryland corporation; REALOGY HOLDINGS CORP., a Delaware corporation; PHH MORTGAGE CORPORATION, a New Jersey corporation; PHH HOME LOANS LLC, a Delaware limited liability company; RMR FINANCIAL, LLC, a California limited liability company; NE MOVES MORTGAGE LLC, a Massachusetts limited liability company; | Case No. 8:15-CV-01973 <br><br> **FOURTH AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF § 8(a) OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2607(a)** <br><br> **JURY TRIAL DEMANDED** |

1  PHH BROKER PARTNER CORPORATION,
   a Maryland corporation;
2  REALOGY GROUP LLC, a Delaware limited
   liability company;
3  REALOGY INTERMEDIATE HOLDINGS
   LLC, a Delaware limited liability company;
4  TITLE RESOURCE GROUP LLC, a
   Delaware limited liability company;
5  WEST COAST ESCROW COMPANY, a
   California corporation;
6  TRG SERVICES ESCROW, INC., a
   Delaware corporation;
7  EQUITY TITLE COMPANY, a California
   corporation;
8  NRT LLC, a Delaware limited liability
9  company;
   REALOGY SERVICES GROUP LLC, a
10 Delaware limited liability company;
   REALOGY SERVICES VENTURE
11 PARTNER LLC, a Delaware limited liability
12 company,

13           Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

# **TABLE OF CONTENTS**

NATURE OF THE ACTION................................................................................. 1

JURISDICTION AND VENUE ......................................................................... 6

PARTIES........................................................................................................... 6

  A.  Plaintiffs .................................................................................................. 6

  B.  Defendants................................................................................................ 6

REGULATORY FRAMEWORK........................................................................ 9

  A.  RESPA Prohibits "Kickbacks" and "Things of Value" in Exchange for Referral of Settlement Services .......................................................... 9

  B.  "Affiliated Business Arrangements" Are Per Se Violations of Section 8 of RESPA Unless They Satisfy All Requirements of Section 8(c)(4) ........................................................... 11

GENERAL FACTUAL ALLEGATIONS ......................................................... 15

  A.  PHH's Operations ................................................................................. 15

    1.  Mortgage Production ................................................................... 15

    2.  Mortgage Servicing ..................................................................... 16

  B.  Realogy's Operations ........................................................................... 17

    1.  Real Estate Franchise Services .................................................... 18

    2.  Company Owned Real Estate Brokerage Services ....................... 18

    3.  Relocation Services ..................................................................... 18

    4.  Title and Settlement Services....................................................... 19

  C.  Between 2005 and 2006, Cendant Spun Off Its Mortgage and Real Estate Services Divisions Into PHH and Realogy, Respectively, Which Remain Affiliated Through Their Contractual Interconnections............................................................. 19

  D.  PHH and Cendant (Now Realogy) Executed an SRA and Formed the PHH Home Loans Joint Venture as Part of Their "Separation" ................................................................. 20

  E.  PHH Receives Crucial Benefits Under the SRA and Related Agreements ......................... 21

  F.  PHH Receives Additional, Undisclosed Benefits from Its Joint Venture with Realogy ..... 21

  G.  PHH Home Loans and PHH Refer All Title Insurance and Other Settlement Services to TRG, Resulting in Marketplace Distortions and Increased Settlement Costs to Consumers ...................................................................... 22

  H.  The PHH Home Loans Originated Mortgage Loans Violate Section 8 and Do Not Satisfy the ABA Exemption Requirements in Section 8(c)(4)........................... 24

  I.  The PLS Partner-Originated Mortgage Loans Also Violate Section 8 ............................... 25

  J.  Defendants' Illegal Scheme Comes to Light When the CFPB Takes Action and PHH and

- i -

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

Realogy Amend the SRA in Late 2015 ............................................................. 25

ALLEGATIONS SPECIFIC TO NAMED PLAINTIFFS ......................................... 28

A.  Class Representatives Sheri Dodge and Neil Dodge ................................... 28

CLASS ACTION ALLEGATIONS ......................................................................... 31

CAUSE OF ACTION .............................................................................................. 33

PRAYER FOR RELIEF .......................................................................................... 36

DEMAND FOR JURY TRIAL ............................................................................... 38

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

Plaintiffs Sheri Dodge, Neil Dodge, Ram Agrawal and Sarita Agrawal, individually and on behalf of all others similarly situated, allege as follows:

## NATURE OF THE ACTION

1.     This is a class action by consumers seeking relief from the improper practices of (a) mortgage lender and servicer PHH Corporation and its subsidiaries and affiliates (collectively, "PHH"); (b) real estate conglomerate Realogy Holdings Corp. and its subsidiaries and affiliates (collectively, "Realogy"); and (c) mortgage lender PHH Home Loans, LLC ("PHH Home Loans"), a joint venture between PHH and Realogy.

2.     Beginning no later than January 31, 2005, PHH, PHH Home Loans, and Realogy entered into a improper scheme of providing cross-referrals, preferences, exclusivities, and other things of value to and among themselves, often through their many affiliates and subsidiaries, for settlement services related to federally-related mortgage loans.  The purpose and effect of the scheme was to permit Defendants (defined below) to influence the market and obtain anticompetitive prices for their services.  In order for their scheme to succeed, the interconnected nature of Defendants' activities was not disclosed to Plaintiffs and other consumers who paid for the services.  From the consumer's standpoint, the real estate broker, mortgage broker, lender, escrow officer, title insurer, and settlement service providers to which they were referred by Defendants were standalone, independent companies, with diverse brand logos and recognizable names like Coldwell Banker, West Coast Escrow, and First Capital, which in no way suggested any affiliation.

3.     Through this scheme, PHH, PHH Home Loans, and Realogy – and certain of their subsidiaries and affiliates – have violated the prohibition on referral fees and kickbacks in connection with residential mortgage loans under the Real Estate Settlement Procedures Act of 1974, as amended, 12 U.S.C. §§ 2601 *et seq.* ("RESPA"), and its implementing regulations, 12 C.F.R. §§ 1024.1 *et seq.*

FOURTH AMENDED CLASS ACTION COMPLAINT

("Regulation X").[1]  RESPA – and, in particular, the prohibition on referral fees and kickbacks in 12 U.S.C. § 2607 – was explicitly designed to protect consumers "from unnecessarily high settlement charges caused by certain abusive practices," such as those described in this Complaint.  12 U.S.C. § 2601(a).  As such, 12 U.S.C. § 2607(a) prohibits the giving or accepting of any "fee," "kickback," or "thing of value" in exchange for business incident to or part of a "settlement service" (as those terms are defined in RESPA and Regulation X and explained below) involving a federally related mortgage loan.

4.     Defendants' scheme had its genesis in the 2005 restructuring of Cendant Corporation ("Cendant"), which was the ultimate parent of all of the PHH and Realogy businesses.  As part of the restructuring, PHH was ostensibly "spun off" from Cendant.  However, while this created two corporate entities, PHH and Cendant entered into a series of contractual arrangements that reconstituted and maintained the close affiliations that existed prior to the spin-off.

5.     The framework of the particular scheme at issue relating to settlement services was obscured in various provisions of these agreements.  When thoroughly analyzed and stitched together, this seemingly disparate set of corporate-level commitments, preferences, exclusivities, and referrals – as implemented at the consumer level – had the design and effect of guiding and pushing unwitting consumers through the home-buying process in a manner that caused the consumers not to use competing settlement service providers.

6.     Defendants executed the scheme in two main ways:

---

[1] Prior to December 30, 2011, Regulation X was located in 24 C.F.R. § 3500.1 *et seq.*  The content and structure were kept substantially identical when the regulation was moved to 12 C.F.R. § 1024.1 *et seq.* in conjunction with the shift of regulatory authority over RESPA from the United States Department of Housing and Urban Development to the Consumer Financial Protection Bureau as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act.  *See Edwards v. First Am. Corp.*, 798 F.3d 1172, 1179 (9th Cir. 2015).

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

7.     **First**, PHH and Realogy (as successor-in-interest to Cendant) created an "Affiliated Business Arrangement" ("ABA") – as that term is defined in RESPA and Regulation X and discussed below – called PHH Home Loans, which was and is a sham venture carefully engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks and things of value in exchange for referrals of settlement services to and among the Defendants, including referrals of title insurance and other settlement services to Realogy's subsidiary, Title Resource Group ("TRG").  PHH and Realogy, through their subsidiaries, hold 50.1% and 49.9%, respectively, of the membership interests in PHH Home Loans; and PHH, through its subsidiary, is the sole Managing Member in control of the venture.

8.     At the time it was spun off from Cendant, PHH also entered into a Strategic Relationship Agreement ("SRA") with Cendant.  (Cendant has since been replaced in that role by Realogy, its successor company.)  Prior to an amendment that occurred on October 21, 2015, PHH was bound under the SRA to refer all title insurance and settlement services to Realogy's subsidiary, TRG (referenced in the SRA as its predecessor entity, Cendant Settlement Services Group, LLC or "CSSG").  Each customer of PHH Home Loans was referred to TRG for title insurance and other settlement services.  In return, PHH received a variety of monetary and nonmonetary referral fees and kickbacks via its ownership and control of the sham ABA and PHH's intricate relationship with Realogy.

9.     Pursuant to the SRA, PHH Home Loans is the exclusively recommended mortgage lender for Realogy's vast real estate brokerage network, which is operated by Realogy's subsidiary, NRT LLC ("NRT"), and includes such recognizable brands as Coldwell Banker, Sotheby's International Realty, ZipRealty, The Corcoran Group, and Citi Habitats.  This exclusive status results in referrals either directly to PHH Home Loans (or an affiliate) to serve either as the mortgage lender or mortgage broker for clients of these real estate brokerages.  When PHH Home Loans or its affiliate acts as the mortgage broker, it places the loans with PHH

FOURTH AMENDED CLASS ACTION COMPLAINT

Mortgage or other PHH affiliates and siphons off substantial broker fees and charges for itself.

10.     Moreover, PHH receives what is effectively a right of first refusal to purchase the mortgage servicing rights for PHH Home Loans originated mortgages, as evidenced by:  (a) the terms of the Limited Liability Company Operating Agreement for PHH Home Loans (the "Operating Agreement"), which permit PHH Home Loans to sell the servicing rights to PHH "on terms no less favorable" than those that could be obtained from an independent third party; and (b) the fact that PHH owns a disproportionate share of the servicing rights for those mortgages relative to PHH's overall market share of residential mortgage servicing.  The details of this arrangement, however, have never been publicly disclosed (and certainly not to the consumers who have paid the fees for the illegally referred services).

11.     **Second**, under the related Private Label Solutions ("PLS") model – in which PHH manages all aspects of the mortgage process for various banking institutions, including, but not limited to, Morgan Stanley, Merrill Lynch (a subsidiary of and trade name for Bank of America, N.A.), HSBC, and UBS (collectively, the "PLS Partners") – PHH directs the PLS Partners to refer title insurance and other settlement services to TRG (and/or its affiliates) without notifying consumers of the existence of PHH's affiliation with TRG, *nor the fact that PHH was required to cause the PLS Partners to refer title insurance and other settlement services to TRG under the terms of the SRA*.  Similar to the PHH Home Loans customers, these unknowing consumers were charged by TRG for the referred services.

12.     PHH also receives disguised kickbacks and fees for the referrals made via the PLS Partners, in the form of, among other things, the right of first refusal over the purchase of the servicing rights to mortgages originated by PHH Home Loans, along with the economic benefits resulting from these servicing rights.

13.     Defendants' mandatory referral arrangement existed for over 10 years until October 21, 2015, when PHH and Realogy amended the SRA to delete the mandatory referral provision – as reflected in an exhibit to a Form 10-Q that PHH submitted to the SEC on November 5, 2015.  A copy of that Form 10-Q – which includes as exhibits the SRA, the Operating Agreement, and the amendments to each – is attached hereto as **Exhibit A**.

14.     RESPA provides individual home buyers with a private right of action and imposes joint and several liability against each person involved in a kickback violation in an amount equal to three times the amount of any charge paid for the settlement service.  12 U.S.C. § 2607(d)(2).  The statute specifically entitles plaintiffs to three times *the actual amount paid for the settlement service*, not just the amount of any overcharge resulting from the illegal kickbacks or referral fees. *See Edwards v. First Am. Corp.,* 610 F.3d 514, 516-17 (9th Cir. 2010) (private plaintiffs alleging kickback violations need not show that they were overcharged for the settlement service in order to recover treble damages based on the full amount paid).  Moreover, courts have upheld the use of federal class actions to enforce kickback violations under RESPA.  *See, e.g., Edwards v. First Am. Corp.,* 798 F.3d 1172, 1185 (9th Cir. 2015) (reversing denial of class certification for alleged kickback violations under RESPA).

15.     By this action, Plaintiffs seek redress for all consumers who were victimized by Defendants' deceptive and collusive practices, which have suppressed competition in the market for settlement services.  Plaintiffs are entitled to damages encompassing all amounts paid to Defendants as fees and other charges for title insurance, escrow services, loan brokerage services, and other settlement services. Pursuant to RESPA, Plaintiffs are entitled to recover treble the amount of such damages.  Plaintiffs bring this action on their own behalf and on behalf of the tens of thousands of consumers who have been similarly victimized by Defendants' illegal scheme.

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2614.  Jurisdiction is also proper in this Court under 28 U.S.C. § 1332(d) because the matter in controversy, exclusive of interest and costs, exceeds the sum of $5,000,000 and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants.

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 2614 because the real property involved in Plaintiffs' mortgage loan transactions is located in this district.  Further, a substantial part of the events or omissions giving rise to the claims occurred in this district, and a substantial part of the property that is the subject of the action is situated in this district.

## PARTIES

### A.     Plaintiffs

18.     Plaintiffs Sheri Dodge and Neil Dodge (collectively, the "Dodges") are individuals and citizens of California.  They reside in Rolling Hills Estates, California, in the County of Los Angeles.

19.     Plaintiffs Ram Agrawal and Sarita Agrawal (collectively, the "Agrawals") are individuals and citizens of California.  They reside in Rancho Palos Verdes, California, in the County of Los Angeles.

### B.     Defendants

20.     Defendant RMR Financial, LLC ("RMR") is a California limited liability company founded in 2005, with its headquarters in Mount Laurel, New Jersey.  RMR does business under various trade names including Princeton Capital, Mortgage California, and First Capital.

21.     Defendant NE Moves Mortgage LLC ("NE Moves") is a Massachusetts limited liability company founded in 2005, with its headquarters in Waltham, Massachusetts.

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

22.     Defendant PHH Home Loans LLC ("PHH Home Loans") is a Delaware limited liability company founded in 2004, with its headquarters in Mount Laurel, New Jersey.  PHH Home Loans does business under various trade names in different regions, including Coldwell Banker Home Loans, Cartus Home Loans, Axiom Financial, and Sunbelt Lending Services.  PHH Home Loans holds a 100% ownership interest in RMR and NE Moves, and any reference to PHH Home Loans shall include RMR, NE Moves, and any other subsidiaries of PHH Home Loans, unless the context dictates otherwise.

23.     Defendant PHH Broker Partner Corporation ("PHH Partner") is a Maryland corporation formed in 1990, with its headquarters in Hunt Valley, Maryland.  PHH Partner has a 50.1% membership interest in PHH Home Loans.

24.     Defendant PHH Mortgage Corporation ("PHH Mortgage") is a New Jersey corporation formed in 1977, with its headquarters in Mount Laurel, New Jersey.  PHH Mortgage was formerly known as Cendant Mortgage Corporation.  All references to PHH Mortgage also include Cendant Mortgage Corporation, as its predecessor, where appropriate.

25.     Defendant PHH Corporation ("PHH") is a New Jersey corporation formed in 2001, with its headquarters in Mount Laurel, New Jersey.  PHH Corp. is the parent corporation and holds a 100% ownership interest in PHH Partner and PHH Mortgage, and any reference to PHH includes PHH Partner and PHH Mortgage, unless the context dictates otherwise.  The precise roles and relationships of each of these affiliated entities in the allegations described herein are known only to Defendants and will be the subject of discovery.

26.     Defendant Realogy Services Venture Partner LLC ("Realogy Partner") is a Delaware limited liability company founded in 2004, with its headquarters in Parsippany, New Jersey.  Realogy Partner has a 49.9% membership interest in PHH Home Loans.  Realogy Partner is the successor in interest of Cendant Real Estate Services Venture Partner, Inc.  All references to Realogy Partner also include

- 7 -

Cendant Real Estate Services Venture Partner, Inc., as its predecessor, where appropriate.

27.     Defendant Realogy Services Group LLC ("Realogy Services") is a Delaware limited liability company founded in 2004, with its headquarters in Parsippany, New Jersey.  Realogy Services was formerly known as Cendant Real Estate Services Group, LLC.  All references to Realogy Services also include Cendant Real Estate Services, LLC, as its predecessor, where appropriate.

28.     Defendant West Coast Escrow Company ("West Coast Escrow") is a California limited liability company founded in 1984, with its headquarters in Madison, New Jersey.

29.     Defendant TRG Services Escrow, Inc. ("TRG Services") is a Delaware corporation founded in 2007, with its headquarters in Madison, New Jersey.

30.     Defendant Equity Title Company ("Equity Title") is a California corporation founded in 1979, with its headquarters in Madison, New Jersey.

31.     Defendant Title Resource Group LLC ("TRG") is a Delaware limited liability company founded in 1999, with its headquarters in Mount Laurel, New Jersey.  TRG was formerly known as Cendant Settlement Services Group, LLC ("CSSG").  TRG does business under various trade names including Equity Title, US Title, Sunbelt Title, Texas American Title Company, Market Street Settlement Group, Mid-Atlantic Settlement, and Burnet Title.  TRG is the parent corporation and holds a 100% interest in West Coast Escrow, TRG Services, and Equity Title. All references to TRG also include West Coast Escrow, TRG Services, and Equity Title, unless the context dictates otherwise, and Cendant Settlement Services Group, LLC, as its predecessor, where appropriate.

32.     Defendant NRT LLC ("NRT") is a Delaware limited liability company founded in 1997, with its headquarters in Madison, New Jersey.  NRT does business under various trade names in different regions, including Coldwell Banker, Sotheby's International Realty, Citi Habitats, The Corcoran Group, and ZipRealty.

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

33.     Defendant Realogy Group LLC ("Realogy Group") is a Delaware limited liability company formed in 2006, with its headquarters in Madison, New Jersey.  Realogy Group is the parent corporation and holds a 100% interest in Realogy Partner, Realogy Services, TRG, and NRT.

34.     Defendant Realogy Intermediate Holdings LLC ("Realogy Intermediate") is a Delaware limited liability company founded in 2006, with its headquarters in Madison, New Jersey.  Realogy Intermediate is the parent corporation and holds a 100% interest in Realogy Group.

35.     Defendant Realogy Holdings Corp. ("Realogy") is a Delaware corporation founded in 2006, with its headquarters in Madison, New Jersey. Realogy Holdings is the parent corporation and holds a 100% interest in Realogy Intermediate, and any reference to Realogy includes Realogy Intermediate, Realogy Group, and each of Realogy Group's subsidiaries, including Realogy Partner, Realogy Services, TRG, and NRT, unless the context dictates otherwise.  The precise roles and relationships of each of these affiliated entities in the allegations described herein are known only to Defendants and will be the subject of discovery.

## REGULATORY FRAMEWORK

### A.     RESPA Prohibits "Kickbacks" and "Things of Value" in Exchange for Referral of Settlement Services

36.     Congress passed RESPA in 1974 to promote competition within the real estate settlement industry and protect consumers from "unnecessarily high settlement charges caused by certain abusive practices."  12 U.S.C. § 2601(a).  One goal, in particular, was the "elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services."  12 U.S.C. § 2601(b).[2]  To this end, section 8 of RESPA, 12 U.S.C. § 2607, essentially bans settlement service providers from collecting unearned fees.

_____

[2] The statute establishes that:

- 9 -

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

37.     Specifically, the statute proscribes referral fees, kickbacks and certain fee-splitting arrangements, which prior to RESPA's implementation drove up transaction costs charged to real estate purchasers without their knowledge.  Thus, section 8(a) prohibits certain business referral fees and provides:

> No person shall give and no person shall accept any fee, kickback, or *thing of value*[3] pursuant to any *agreement or understanding*,[4] oral or otherwise, that business incident to or a part of a real estate settlement

---

[T]he term "Settlement services" includes any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handling of the processing, and closing or settlement . . . .

12 U.S.C. § 2602(3).

[3] "Thing of value" is broadly defined in RESPA and Regulation X.  *See* 12 U.S.C. § 2602(2) ("[T]he term "thing of value" includes any payment, advance, funds, loan, service, or other consideration . . .."); 12 C.F.R. § 1024.14(d) ("Thing of value . . . includes, without limitation, monies, things, discounts, salaries, commissions, fees, duplicate payments of a charge, stock, dividends, distributions of partnership profits, franchise royalties, credits representing monies that may be paid at a future date, the opportunity to participate in a money-making program, retained or increased earnings, increased equity in a parent or subsidiary entity, special bank deposits or accounts, special or unusual banking terms, services of all types at special or free rates, sales or rentals at special prices or rates, lease or rental payments based in whole or in part on the amount of business referred, trips and payment of another person's expenses, or reduction in credit against an existing obligation.  The term "payment" is used throughout §§ 1024.14 and 1024.15 as synonymous with the giving or receiving of any "thing of value" and does not require transfer of money.")

[4] The statute establishes that:

An agreement or understanding for the referral of business incident to or part of a settlement service need not be written or verbalized but may be established by a practice, pattern or course of conduct. When a thing of value is received repeatedly and is connected in any way with the volume or value of the business referred, the receipt of the thing of value is evidence that it is made pursuant to an agreement or understanding for the referral of business.

12 C.F.R. § 1024.14(e).

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

service involving a *federally related mortgage loan*[5] shall be referred to
any person.

12 U.S.C. § 2607(a) (emphasis and footnotes added).[6]

38.     Further, section 8 specifies that "[a]ny referral of a settlement service is
not a compensable service, except as set forth in § 1024.14(g)(1)," which sets forth
all "fees, salaries, compensation, or other payments" permitted under section 8." 12
C.F.R. §1024.14(g), *codified at* 12 U.S.C. § 2607.  These include the payment of
fees and salaries for services actually performed and goods actually furnished, as
well as payments made pursuant to arrangements between real estate agents and
brokers.  These limited exemptions remain unchanged.  *See* 12 U.S.C. § 2607(c)(1)-
(3).

## B.     **"Affiliated Business Arrangements" Are Per Se Violations of Section 8 of RESPA Unless They Satisfy All Requirements of Section 8(c)(4)**

39.     In response to RESPA, many settlement service providers abandoned
the classic kickback – where a specific payment was made in return for a specific
referral and there was no other reason for the payment – and instead devised
sophisticated transactions involving a less obvious causal link between the referral
and the payment.  These transactions arose most frequently within the context of
business arrangements where one settlement service provider maintained an

---

[5] "Federally related mortgage loan" is broadly defined in RESPA and Regulation X
to include most residential mortgages, including refinancings and second mortgages.
*See* 12 U.S.C. § 2602(1); 12 C.F.R. § 1024.2(b).

[6] In addition, section 8(b) makes illegal the splitting of charges such that:

No person shall give and no person shall accept any portion, split, or percentage
of any charge made or received for the rendering of a real estate settlement
service in connection with a transaction involving a federally related mortgage
loan other than for services actually performed.

12 U.S.C. § 2607(b).

FOURTH AMENDED CLASS ACTION COMPLAINT

enhanced relationship with a second provider of a different settlement service, through which each service provider captured the clients of the other.

40.     In turn, Congress enacted two significant amendments to section 8 to address instances in which no direct kickback or referral fee is paid.  First, Congress changed the calculation of damages from three times the amount of the kickback or referral fee to three times "any charge paid" for the settlement service.  12 U.S.C. § 2607(d)(2).  Thus, upon establishing a violation, a consumer is entitled to recover treble damages based on the full amount paid for the referred settlement service without the need to quantify the kickback or demonstrate any overcharge.  *See Edwards v. First Am. Corp.,* 610 F.3d 514, 518 (9th Cir. 2010) (class plaintiffs have standing to bring RESPA claims even when no overcharge can be established).

41.     Second, Congress defined and permitted "Controlled Business Arrangements" – since renamed "Affiliated Business Arrangements" ("ABAs") – only under limited circumstances designed to ameliorate their inherently abusive nature.  RESPA defines an ABA as:

> an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.

12 U.S.C. § 2602(7).[7]

42.     ABAs are permitted, so long as they abide by *all* of the requirements enumerated in section 8(c)(4):

> Nothing in [Section 8] shall be construed as prohibiting . . . (4) affiliated business arrangements so long as (A) a *disclosure is made of the existence of such an arrangement* to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge

---

[7] The terms "associate" and "affiliate relationship" are defined in 12 U.S.C. § 2602(8) and 12 C.F.R. § 1024.15(c), respectively.

FOURTH AMENDED CLASS ACTION COMPLAINT

or range of charges generally made by the provider to which the person is referred . . . , (B) such person is not required to use any particular provider of settlement services, and (C) *the only thing of value that is received* from the arrangement, other than the payments permitted under this subsection, *is a return on the ownership interest or franchise relationship*.

12 U.S.C. § 2607(c)(4) (emphasis added).

43. The regulations and case law interpreting the ABA provisions have provided important clarifications. Most significantly, courts have held that section 8(c)(4) is not merely an exemption. Rather, all ABAs are *presumed* to violate section 8 and are permissible *only* if the three conditions in section 8(c)(4) are satisfied. *See, e.g., Bolinger v. First Multiple Listing Serv., Inc.,* 838 F. Supp. 2d 1340, 1355 (N.D. Ga. 2012) ("Section 8(c)(4) provides a cause of action independent of Sections 8(a) and (b)."); *accord Minter v. Wells Fargo Bank, N.A.,* 274 F.R.D. 525, 538-39 (D. Md. 2011) ("ABAs not in compliance with the three conditions of Section 8(c)(4) are per se violations. . . . By statutory definition . . . ABAs involve by virtue of their affiliation the transfer of a 'thing of value' in exchange, explicitly or not, for referrals and such transfers are prohibited.").

44. Also, regulators and courts have sought to curtail the abusive practice of using the façade of a compliant ABA to insulate a business arrangement that has as its primary purpose circumventing RESPA's kickback ban, as is the case with PHH Home Loans. In 1996, the United States Department of Housing and Urban Development ("HUD"), which was at that time the regulatory body tasked with implementing RESPA,[8] issued a Statement of Policy to help identify these sham ABAs disguised as joint ventures. *See* 61 Fed. Reg. 29258, at *29259 (June 7, 1996). Courts have looked to the ten-factor test found in HUD's policy statement to determine whether a particular joint venture is a permissible ABA, and have held

---

[8] Effective July 21, 2011, the CFPB assumed this role as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act.

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

that if a purported ABA "fails the HUD Ten Factor Test, the arrangement to which it is a party is a violation of RESPA."[9]  *See Minter*, 274 F.R.D. at 543.

45.     Thus, any arrangement involving an ABA is a per se violation of section 8 unless it is both a legitimate ABA (utilizing the ten-factor analysis employed by HUD and the courts) *and* meets all three requirements of section 8(c)(4).

---

[9] The ten factors are:  (1) Does the new entity have sufficient initial capital and net worth, typical in the industry, to conduct the settlement service business for which it was created?  Or is it undercapitalized to do the work it purports to decide?  (2) Is the new entity staffed with its own employees to perform the services it provides?  Or does the new entity have "loaned" employees of one of the parent providers?  (3) Does the new entity manage its own business affairs?  Or is an entity that helped create the new entity running the new entity for the parent provider making the referrals?  (4) Does the new entity have an office for business which is separate from one of the parent providers?  If the new entity is located at the same business address as one of the parent providers, does the new entity pay a general market value rent for the facilities actually furnished?  (5) Is the new entity providing substantial services, i.e., the essential functions of the real estate settlement service, for which the entity receives a fee?  Does it incur the risks and receive the rewards of any comparable enterprise operating in the market place?  (6) Does the new entity perform all of the substantial services itself?  Or does it contract out part of the work?  If so, how much of the work is contracted out?  (7) If the new entity contracts out some of its essential functions, does it contract services from an independent third party?  Or are the services contracted from a parent, affiliated provider or an entity that helped create the controlled entity?  If the new entity contracts out work to a parent, affiliated provider or an entity that helped create it, does the new entity provide any functions that are of value to the settlement process?  (8) If the new entity contracts out work to another party, is the party performing any contracted services receiving a payment for services or facilities provided that bears a reasonable relationship to the value of the services or goods received?  Or is the contractor providing services or goods at a charge such that the new entity is receiving a "thing of value" for referring settlement service business to the party performing the service?  (9) Is the new entity actively competing in the market place for business?  Does the new entity receive or attempt to obtain business from settlement service providers other than one of the settlement services providers that created the new entity?  (10) Is the new entity sending business exclusively to one of the settlement service providers that created it (such as the title application for a title policy to a title insurance underwriter or a loan package to a lender)?  Or does the new entity send business to a number of entities, which may include one of the providers that created it?  61 Fed. Reg. 29258, at *29262.  The ten factors are to be considered in their totality and balanced appropriately in light of the specific facts of the business arrangement under review.  *Id.*

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

## GENERAL FACTUAL ALLEGATIONS

**A.**     **PHH's Operations**

46.     PHH touts itself as a leading non-bank mortgage originator and servicer of U.S. residential mortgage loans.  Through PHH Mortgage and its subsidiaries, PHH provides outsourced mortgage banking services to a variety of clients, including financial institutions and real estate brokers throughout the U.S., and is focused on originating, selling, and servicing residential mortgage loans. According to *Inside Mortgage Finance*, PHH Mortgage was the fifth largest retail mortgage originator with a 4.7% market share for the nine months ending September 30, 2014.  *Inside Mortgage Finance* also reported that PHH Mortgage was the eighth largest mortgage loan servicer with a 2.3% market share as of December 31, 2014.

47.     PHH's business activities are divided into two operating segments: Mortgage Production (also referred to as mortgage origination) and Mortgage Servicing.

**1.**     **Mortgage Production**

48.     PHH's Mortgage Production segment, which accounted for approximately $231 million in revenue in 2014, provides private-label mortgage services to financial institutions and real estate brokers.  It generates revenue through fee-based mortgage loan origination services and the origination and sale of mortgage loans into the secondary market.  PHH Mortgage generally sells all saleable mortgage loans that it originates to secondary market investors, which include a variety of institutional investors, and initially retains the servicing rights on mortgage loans sold.  The mortgage loans are typically sold within 30 days of origination and classified as held for sale until sold.  During 2014, 69% of PHH's mortgage loans were sold to, or were sold pursuant to, programs sponsored by Fannie Mae, Freddie Mac or Ginnie Mae and the remaining 31% were sold to private investors.

49.     PHH sources its mortgage loans through its retail and its wholesale/correspondent platforms.  Within the retail platform, it operates through two principal business channels:  PHH Private Label Solutions ("PLS") and a real estate joint venture with Realogy, PHH Home Loans.

50.     *Private Label Solutions.*  PHH offers complete mortgage outsourcing solutions to wealth management firms, regional banks, and community banks, including Merrill Lynch, Morgan Stanley, and HSBC – which represented 24%, 21%, and 10%, respectively, of PHH's total mortgage loan originations in 2014. The PLS component of PHH's mortgage origination business accounted for 67% and 72% of its origination volume in 2013 and 2014, respectively.

51.     *PHH Home Loans.*  PHH Home Loans, which is more fully described below, is supported by PHH's relationship with Realogy, which represented 24% of PHH's mortgage originations in 2014 and 23% in 2013.

52.     *Wholesale/Correspondent.*  PHH also purchases closed mortgage loans from community banks, credit unions, mortgage brokers, and mortgage bankers, and also acquires mortgage loans from mortgage brokers that receive applications from and qualify the borrowers.  This wholesale/correspondent platform accounted for only 4% of PHH's originations in 2014, down from 10% in 2013.

## 2.     <u>Mortgage Servicing</u>

53.     PHH's Mortgage Servicing segment, which accounted for approximately $264 million in revenue in 2014, services mortgage loans originated by PHH Mortgage, purchases mortgage servicing rights from others, and acts as a subservicer for certain clients that own the underlying servicing rights.  PHH services loans on behalf of the owners of the underlying mortgage, and it has limited exposure to credit risk because it does not hold loans for investment purposes.  PHH principally generates revenue in its mortgage servicing segment through contractual fees earned from its servicing rights primarily based on a percentage of the unpaid

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

1  principal balance ("UPB"), or from its subservicing agreements, which are typically

2  a stated amount per loan.

3      54.    PHH's stated corporate strategy has been to position its mortgage

4  business to be less capital intensive and to have more fee-based revenue streams.

5  As a result, PHH grew the UPB of its subservicing portfolio from $40.8 billion at

6  the end of 2012, to $96.3 billion at the end of 2013, and $113.4 billion at the end of

7  2014.

8  **B.    Realogy's Operations**

9      55.    Realogy claims to be the preeminent and most integrated provider of

10  residential real estate services in the U.S.  Realogy describes itself as:  the world's

11  largest franchisor of residential real estate brokerages with some of the most

12  recognized brands in the real estate industry; the largest owner of U.S. residential

13  real estate brokerage offices; the largest U.S. and a leading global provider of

14  outsourced employee relocation services; and a significant provider of title and

15  settlement services.

16      56.    Realogy's revenue is derived on a fee-for-service basis.  Realogy

17  claims that, due to its breadth of "complementary" service offerings, it is able to

18  generate fees from multiple aspects of a residential real estate transaction.

19  Realogy's operating platform is supported by its portfolio of industry leading

20  franchise brokerage brands, in addition to non-franchise brands owned and operated

21  through NRT.  Realogy's multiple brands and operations allow it to derive revenue

22  from many different segments of the residential real estate market, in many different

23  geographies, and at varying price points.

24      57.    Realogy divides its operations into four segments, each of which

25  receives fees based upon services performed for its customers:  Real Estate

26  Franchise Services, Company Owned Real Estate Brokerage Services, Relocation

27  Services, and Title and Settlement Services.

28

FOURTH AMENDED CLASS ACTION COMPLAINT

### 1.    Real Estate Franchise Services

58.    Realogy is the largest franchisor of residential real estate brokerages in the world through its portfolio of well-known brokerage brands, including Century 21, Coldwell Banker, Coldwell Banker Commercial, ERA, Sotheby's International Realty, and Better Homes and Gardens Real Estate.  As of December 31, 2014, Realogy's real estate franchise systems (inclusive of its company owned brokerage operations) had approximately 13,500 offices worldwide in 104 countries and territories.  This included approximately 6,000 brokerage offices in the U.S. and approximately 251,300 independent sales associates worldwide, including approximately 174,600 independent sales associates operating under its franchise and proprietary brands in the U.S.  Realogy's franchisees pay Realogy fees for the right to operate under one of its trademarks and to enjoy the benefits of the systems and "business enhancing tools" provided by its real estate franchise operations.

### 2.    Company Owned Real Estate Brokerage Services

59.    Realogy, via subsidiary NRT, owns and operates the largest residential real estate brokerage business in the U.S. under the Coldwell Banker, Corcoran Group, Sotheby's International Realty, ZipRealty, and Citi Habitats brand names. Realogy offers full-service residential brokerage services through more than 725 company owned brokerage offices with approximately 45,000 independent sales agents in more than 45 of the 100 largest metropolitan areas of the U.S.  NRT, as the broker for a home buyer or seller, derives revenues primarily from commission income received at the closing of real estate transactions.  To complement its residential brokerage services, NRT offers home ownership services that include comprehensive single-family residential property management in many of the nation's largest rental markets.

### 3.    Relocation Services

60.    Realogy, through subsidiary Cartus Corporation ("Cartus"), claims to be a leading global provider of outsourced employee relocation services.  Cartus is

FOURTH AMENDED CLASS ACTION COMPLAINT

the largest provider of such services in the U.S. and operates in several international relocation destinations.  Cartus offers a broad range of employee relocation services designed to manage all aspects of an employee's move.  The relocation business serves corporations, including 56% of the Fortune 50 companies.  Cartus also services affinity organizations such as insurance companies and credit unions that provide Cartus's services to their members.  In 2014, Cartus assisted in over 171,000 corporate and affinity relocations in nearly 150 countries for approximately 1,100 active clients.

### 4. Title and Settlement Services

61.    Through subsidiary TRG, Realogy assists with the closing of real estate transactions by providing full-service title and settlement (i.e., closing and escrow) services to customers, real estate companies – including Realogy's company owned real estate brokerage and relocation services businesses – as well as a targeted channel of large financial institution clients, including PHH.  In 2014, TRG was involved in the closing of approximately 141,000 transactions of which approximately 58,000 related to NRT.  In addition to its own title and settlement services, TRG also coordinates a nationwide network of attorneys, title agents, and notaries to service financial institution clients on a national basis.  TRG also serves as an underwriter of title insurance policies in connection with residential and commercial real estate transactions.

### C. Between 2005 and 2006, Cendant Spun Off Its Mortgage and Real Estate Services Divisions Into PHH and Realogy, Respectively, Which Remain Affiliated Through Their Contractual Interconnections

62.    Prior to February 1, 2005, PHH and Realogy were part of a single real estate conglomerate known as Cendant.

63.    When Cendant spun off PHH into its own company, Cendant and PHH sought to maintain coordination of their business practices (if not their prior

1294965.1

corporate form).  As PHH explained in a Form 10-K filed with the SEC on March 2 2009 (emphasis added):

> For periods between April 30, 1997 and February 1, 2005, we were a wholly owned subsidiary of Cendant (renamed Avis Budget Group, Inc.) and its predecessors that provided homeowners with mortgages, serviced mortgage loans, facilitated employee relocations and provided vehicle fleet management and fuel card services to commercial clients.  On February 1, 2005, we began operating as an independent, publicly traded company pursuant to our spin-off from Cendant (the "Spin-Off").  In connection with the Spin-Off, we entered into several contracts with Cendant and Cendant's real estate services division to provide for the separation of our business from Cendant and ***the continuation of certain business arrangements with Cendant's real estate services division, including a separation agreement, a tax sharing agreement, a strategic relationship agreement, a marketing agreement, trademark license agreements and the operating agreement for PHH Home Loans, LLC***[.]

64.     Effective July 31, 2006, Cendant spun off its real estate services division into its own corporation, Realogy, but the ties between the businesses did not change.  Rather, Realogy stepped into the shoes of Cendant for purposes of Cendant's real estate service arrangements with PHH.

**D.     PHH and Cendant (Now Realogy) Executed an SRA and Formed the PHH Home Loans Joint Venture as Part of Their "Separation"**

65.     PHH and Cendant, through their subsidiaries, executed the Strategic Relationship Agreement ("SRA") and Limited Liability Company Operating Agreement of PHH Home Loans (the "Operating Agreement") on January 31, 2005, the same day PHH was spun off from Cendant.

66.     As detailed below, the SRA describes an exchange of various rights and other things of value amongst PHH, Cendant (now Realogy), various subsidiaries and affiliates of both, and PHH Home Loans.  The SRA creates a joint venture between subsidiaries of PHH and Realogy specifically to act as a sham ABA to give PHH hidden kickbacks and referral fees in exchange for the referral of title insurance and other settlement services to a subsidiary of Realogy, TRG.  *See* **Exhibit A**, Strategic Relationship Agreement.

67.     The Operating Agreement supplements the SRA by detailing the operation of the joint venture and providing additional benefits to PHH.  PHH and Realogy, through their subsidiaries PHH Partner and Realogy Partner, hold 50.1% and 49.9% of the membership interests in PHH Home Loans; and PHH Partner is the sole managing member in control of the joint venture.  Moreover, as explained below, the Operating Agreement facilitates the preferential transfer of lucrative mortgaging servicing rights to PHH Home Loans.  *See* **Exhibit A**, Operating Agreement.

**E.     PHH Receives Crucial Benefits Under the SRA and Related Agreements**

68.     Of critical importance to PHH's business, the SRA provides that PHH Home Loans is the *exclusively* recommended mortgage lender for the vast network of Realogy-owned brokerages.  The SRA also provides PHH Home Loans access to consumers attending trade shows, conventions, and conferences organized by Realogy's brokerages, held by subsidiary NRT.  NRT further agreed as part of the SRA to allow PHH Home Loans to use NRT's office space.

69.     Under separate but related agreements, PHH Home Loans has the exclusive right to use the Century 21, Coldwell Banker, and ERA brand names in marketing its mortgage loan products; and PHH markets mortgage loan products to Realogy's brokerage franchises and its Cartus relocation business.

70.     Moreover, PHH has acknowledged – including in a Form 10-K filed with the SEC on February 27, 2015 – that its mortgage origination business "is substantially dependent upon [its] relationship with Realogy."  According to the filing, 24% of PHH's mortgage loan originations during 2014 were derived from Realogy.

**F.     PHH Receives Additional, Undisclosed Benefits from Its Joint Venture with Realogy**

71.     PHH derived other benefits from its arrangements with Realogy that were not only hidden from Plaintiffs and consumers, but from the public at large.

72.     As managing member under the Operating Agreement – via its subsidiary, PHH Partner – PHH is responsible for selling the mortgage loans originated by PHH Home Loans, including the lucrative servicing rights to those loans.  The Operating Agreement expressly permits PHH to cause PHH Home Loans to sell the mortgages to PHH, so long as the terms are "no less favorable" than what an independent third party would pay.  In other words, PHH has the authority to sell servicing rights to itself, so long as PHH matches the price that would be paid by a competitor.  Thus, in effect, PHH has a right of first refusal to acquire lucrative servicing rights.

73.     PHH purports to sell the servicing rights for PHH Home Loans originated loans to the highest bidder.  Yet, PHH ends up acquiring a disproportionately large share of those servicing rights versus PHH's overall market share for mortgage servicing.

74.     PHH is able to acquire this disproportionate share of servicing rights through the foregoing right of first refusal, whereby PHH is permitted to purchase the rights at a price equal to the highest bid.  This right to match the highest bid is immensely valuable for PHH because it discourages other potential buyers of the servicing rights from bidding.

**G.      PHH Home Loans _and_ PHH Refer All Title Insurance and Other Settlement Services to TRG, Resulting in Marketplace Distortions and Increased Settlement Costs to Consumers**

75.     Realogy agreed to give PHH special rights with respect to the purchase of servicing rights from PHH Home Loans, in part because both PHH Home Loans _and_ PHH (including by way of the PLS Partners) referred all title insurance and other settlement services business to Realogy's subsidiary, TRG.

76.     In fact, PHH was bound under the SRA to refer – and cause each PLS Partner to refer – all title insurance and settlement services to TRG.  Section 6.3 of the SRA provides that "PHH shall, and shall cause its subsidiaries to (i) recommend

- 22 -
FOURTH AMENDED CLASS ACTION COMPLAINT

CSSG [now TRG] as provider of Settlement Services," "(ii) utilize [TRG] on an exclusive basis," and "(iii) recommend [TRG] as provider of Settlement Services to private label solutions ("PLS") partners and the Small Corps . . . ."[10]

Section 6.3 Settlement Services.

PHH shall, and shall cause its Subsidiaries to (i) recommend CSSG as provider of Settlement Services (including, without limitation, on all transactions where PHH or one of its Subsidiaries has the option to choose the provider of such services, all closings by mail, all *CONFIDENTIAL and all search products such as Property and Judgment Reports), (ii) utilize CSSG on an exclusive basis

* The term "Confidential" indicates material that has been omitted and for which confidential treatment has been requested. All such omitted material has been filed with the Securities and Exchange Commission pursuant to Rule 24b-2 under the Securities Exchange Act of 1934, as amended.

whenever PHH or one of its Subsidiaries has the option to choose the title or escrow agent and, in the applicable jurisdiction, CSSG either provides such services or receives compensation in connection with such services or both, and (iii) recommend CSSG as provider of Settlement Services to private label solutions ("PLS") partners and the Small Corps; provided, however, that: (a) during the first eighteen (18) months after the date of this Agreement, CSSG shall provide all such services at the pricing levels which existed immediately prior to execution of this Agreement (and, thereafter, agree to most favored nation status for such pricing); and (b) within one hundred eighty (180) days from the date of this Agreement, Cendant Real Estate shall cause CSSG to provide most favored nation status on service level agreements and processes that are consistent with existing CSSG service levels. PHH shall not, and shall cause its Subsidiaries not to, enter into any arrangement that provides for a party other than CSSG to provide the products and services set forth in (i) above to PHH's customers or its PLS partners' customers, unless such PLS partner requires an alternative provider as a condition to entering into or renewing such arrangement with PHH or such Subsidiary and then only after CSSG has been afforded the opportunity to present its service offerings to such PLS partner.

77.     Plaintiffs and other customers of PHH, PHH Home Loans, and each of the PLS Partners were referred to TRG for title insurance and other settlement services and charged fees by TRG for these services.  Plaintiffs and other customers trusted and relied that these referrals were lawful and not part of an anticompetitive kickback scheme.

78.     PHH, PHH Home Loans, and each of the PLS Partners (at the direction of PHH) made these referrals in exchange for the unlawful kickbacks described above, causing the precise marketplace distortions and increased settlement costs that RESPA seeks to remedy.

79.     Thus, while not a required element of a section 8 claim under controlling law, all customers who were referred to TRG for title insurance and settlement services by PHH, PHH Home Loans, and each of the PLS Partners paid more for these services than they would have paid in the absence of the referrals and kickbacks.

[10] The Small Corps – which include, among others, Defendants RMR and NE Moves – are subsidiary entities utilized to make mortgage loans for the joint venture.

FOURTH AMENDED CLASS ACTION COMPLAINT

80.    Indeed, as examples of further RESPA violations stemming from the mandatory referral provisions of the SRA, Realogy (through its brokerage subsidiaries), on information and belief, has implemented improper bonus structures and entered into other anticompetitive marketing agreements with its real estate managers and agents.  Among other things, bonus compensation paid to real estate managers is tied to the capture rate for settlement services and other referrals to affiliates.  In addition, the allocation of marketing funds to agents increases based on referrals to affiliates, all in connection with PHH Home Loans mortgages.

## H.    The PHH Home Loans Originated Mortgage Loans Violate Section 8 and Do Not Satisfy the ABA Exemption Requirements in Section 8(c)(4)

81.    PHH and Realogy have sought to disguise the improper kickback of benefits to PHH in exchange for referrals of title insurance and other settlement services to TRG by forming the PHH Home Loans joint venture.

82.    Under the SRA, PHH and Realogy caused PHH Home Loans to refer title insurance and other settlement services to TRG in exchange for the benefits flowing to PHH described above, including the undisclosed right of first refusal for the purchase of the servicing rights for loans originated by PHH Home Loans.

83.    Defendants, however, failed to notify Plaintiffs and other members of the Class of the full nature of the relationships and business arrangements amongst PHH, PHH Home Loans, Realogy, and TRG, as explained above.

84.    Further, as discussed above, the purported ABA was in fact an improper venture designed to facilitate improper kickbacks and referral fees.

85.    In addition, PHH's receipt of additional benefits in exchange for the referrals, as described above, was a "thing of value . . . received from the arrangement, other than . . . a return on the ownership interest or franchise relationship."

- 24 -
FOURTH AMENDED CLASS ACTION COMPLAINT

**I.      The PLS Partner-Originated Mortgage Loans Also Violate Section 8**

86.      PHH caused the PLS Partners – including Merrill Lynch, Morgan Stanley, HSBC, and UBS, among others – to refer title insurance and other settlement services to TRG in exchange for the benefits flowing to PHH described above, including the undisclosed right of first refusal for the purchase of the servicing rights for loans originated by PHH Home Loans.

87.      Neither PHH, the PLS Partners, nor TRG notified Plaintiffs and consumers that the title insurance and other settlement services were referred to TRG based on its relationship and arrangements with PHH, *nor did they disclose that PHH was contractually bound to cause each PLS Partner to recommend TRG as the exclusive provider of title insurance and other settlement services.*

88.      Rather, PHH and TRG misled Plaintiffs and consumers into believing that referrals to TRG were made solely at the discretion of the respective PLS Partner and based on the PLS Partner's opinion of the quality of TRG's services.

**J.      Defendants' Illegal Scheme Comes to Light When the CFPB Takes Action and PHH and Realogy Amend the SRA in Late 2015**

89.      On June 4, 2015, the Consumer Financial Protection Bureau ("CFPB") issued a Decision of the Director which found PHH liable under section 8 based on an additional improper kickback scheme related to the payment of mortgage reinsurance premiums to subsidiaries of PHH – Atrium Insurance Corporation and Atrium Reinsurance Corporation (collectively, "Atrium"). *See* **Exhibit B**.

90.      Among the penalties imposed on PHH was the disgorgement of over *$109 million* in improper fees.[11]  Also, the CFPB imposed extensive and long-lasting injunctive penalties, including enjoining "PHH from referring borrowers to

---

[11] This figure would have been substantially higher were it not for a three-year statute of limitations on regulatory actions under section 8 in place prior to the transfer of regulatory authority to the CFPB.  The decision limits liability to payments occurring on or after July 21, 2008, despite noting that PHH's RESPA violations began in 1995 and persisted for nearly two decades.

FOURTH AMENDED CLASS ACTION COMPLAINT

*any provider of a settlement service* if that provider has agreed to purchase a service from PHH, and if payment for that service is triggered by the referrals.  This provision seeks to prevent PHH from entering into illegal referral agreements with respect to *any settlement service*, and it also applies for *15 years* from the date the order becomes effective, as a further means of fencing in PHH against the commission of similar violations of RESPA."  (Emphasis added.)

91.     The CFPB's decision explained that PHH's violations spanned roughly 18 years; that there was no indication that PHH changed its practices for any reason other than that the arrangement had ceased to be lucrative; and that PHH had not taken any steps to reduce the likelihood of future violations.  The decision further explains the broad injunctions by commenting that "referral agreements that violate section 8(a) can be difficult to detect."

92.     The CFPB's decision against PHH in the Atrium matter drew media attention and caused industry analysts to scrutinize PHH and question if it might have additional exposure for similar violations.  For example, on August 6, 2015, PHH held a conference call for investors and securities analysts to discuss its financial results for the second quarter of 2015.  During that call, an analyst asked PHH's President and CEO to clarify whether PHH's relationship with Realogy is similar to the relationships it had with the companies named in the CFPB action, and he responded simply by asserting that the PHH Home Loans joint venture is not a marketing services agreement.  (Moreover, as described below, in response to a follow-up question, the President and CEO of PHH provided a misleading description of PHH's obligations to refer title and other settlement services to TRG.)

93.     Nevertheless, on September 9, 2015, PHH and Realogy suddenly amended the SRA.

94.     On October 8, 2015, the CFPB issued its Compliance Bulletin 2015-05, a copy of which is attached as **Exhibit C**.  The stated purpose of that Bulletin was to "remind participants in the mortgage industry of the prohibition on kickbacks and

FOURTH AMENDED CLASS ACTION COMPLAINT

referral fees" under RESPA, and to "describe the substantial risks posed by entering into marketing services agreements (MSAs)." The CFPB explained that, based on its investigative efforts, "it appears that many MSAs are designed to evade RESPA's prohibition on the payment and acceptance of kickbacks and referral fees." Accordingly, the CFPB expressed its "grave concerns" about the use of MSAs, and forcefully recommended that "a more careful consideration of legal and compliance risks arising from MSAs would be in order for mortgage industry participants generally."

95.    Less than two weeks after the CFPB issued its Compliance Bulletin, on October 21, 2015, PHH and Realogy *amended and restated the September 9, 2015 amendment* to the SRA. This October 21, 2015 "Amended and Restated Amendment No. 2" to the SRA was provided as an exhibit to PHH's Form 10-Q for the third quarter of 2015, which was filed with the SEC on November 5, 2015. As reflected therein, the end result of this series of amendments to the SRA was the **deletion of the provision requiring the mandatory referral of settlement services to TRG** described above.

96.    The amendment of the SRA did not escape the attention of industry analysts, and was the subject of media reports in November 2015 questioning the purpose and effect of the changes. For example, according to a November 13, 2015 media report discussing the SRA amendment and the possible reasons for it, a statement was attributed to Realogy's vice president for corporate communications in which he defended Realogy's joint ventures but acknowledged that, apart from the joint ventures themselves, Realogy had recently "reviewed all of our practices to assure that they comply with the law and regulations."

97.    On information and belief, PHH and Realogy amended the SRA because they knew the mandatory referral provision of the SRA violated section 8 of RESPA, 12 U.S.C. § 2607(a), and sought to limit future exposure.

1294965.1

## ALLEGATIONS SPECIFIC TO NAMED PLAINTIFFS

**A.**     **Class Representatives Sheri Dodge and Neil Dodge**

98.     On or about October 30, 2015, the Dodges refinanced their mortgage loan for a home located at 2241 Estribo Drive in Rolling Hills Estates, California, with Morgan Stanley Private Bank, N.A.  PHH acted as Morgan Stanley Private Bank, N.A.'s agent and provided services for Morgan Stanley Private Bank, N.A. in processing and underwriting the loan.

99.     The Dodges were referred to TRG for both title insurance (via TRG subsidiary Equity Title) and other settlement services (via TRG subsidiary TRG Services) in connection with the refinance.  The Dodges trusted and relied that the referrals were lawful and not part of an anticompetitive kickback scheme.

100.     The Dodges paid fees and other charges totaling approximately $1,233.50 to Equity Title and TRG Services for title insurance and other settlement services, respectively, in conjunction with the settlement of the mortgage loan.

101.     After closing, the Dodges' new loan was serviced by PHH.

102.     On or about October 30, 2015, the Dodges refinanced their mortgage loan for a home located at 7815 Arbor Circle, 103C, in Huntington Beach, California, with Morgan Stanley Private Bank, N.A.  PHH acted as Morgan Stanley Private Bank, N.A.'s agent and provided services for Morgan Stanley Private Bank, N.A.in processing and underwriting the loan.

103.     The Dodges were referred to TRG for both title insurance (via TRG subsidiary Equity Title) and other settlement services (via TRG subsidiary TRG Services) in connection with the refinance.  The Dodges trusted and relied that the referrals were lawful and not part of an anticompetitive kickback scheme.

104.     The Dodges paid fees and other charges totaling approximately $1,053.50 to Equity Title and TRG Services for title insurance and other settlement services, respectively, in conjunction with the settlement of the mortgage loan.

105.     After closing, the Dodges' new loan was serviced by PHH.

106.   On or about November 2, 2015, the Dodges refinanced their mortgage loan for a home located at 14 Celeste Place in Rolling Hills Estates, California, with Morgan Stanley Private Bank, N.A.  PHH acted as Morgan Stanley Private Bank, N.A.'s agent and provided services for Morgan Stanley Private Bank, N.A.in processing and underwriting the loan.

107.   The Dodges were referred to TRG for both title insurance (via TRG subsidiary Equity Title) and other settlement services (via TRG subsidiary TRG Services) in connection with the refinance.  The Dodges trusted and relied that the referrals were lawful and not part of an anticompetitive kickback scheme.

108.   The Dodges paid fees and other charges totaling approximately $1,618.50 to Equity Title and TRG Services for title insurance and other settlement services, respectively, in conjunction with the settlement of the mortgage loan.

109.   After closing, the Dodges' new loan was serviced by PHH.

110.   The Dodges were **not** notified in connection with either of the three transactions that PHH had been contractually obligated to refer clients to Equity Title and TRG Services for title and other settlement services, and to cause Morgan Stanley Private Bank, N.A. to refer all title insurance and settlement services to TRG; and the Dodges were not aware of these arrangements.

111.   The Dodges were also **not** notified and not aware of the true nature of the business arrangements and affiliations involving PHH, Equity Title, and TRG Services, as explained herein.

112.   The Dodges were given no reason to suspect that these entities were not acting independently from one another, and were not acting in the Dodges' best interests, when Defendants referred the Dodges to other Defendants for settlement services.  Instead, the Dodges trusted that each of these referrals was lawful and had no idea that they were being victimized by Defendants' anti-competitive kickback scheme.

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

113.   As a result of the referrals described above, which were made in conformity with the illegal scheme described herein between PHH and Realogy, the Dodges paid more for settlement services than they would have paid in the absence of the anticompetitive referrals and kickbacks.

**B.      Class Representatives Ram Agrawal and Sarita Agrawal**

114.   On or about March 31, 2015, the Agrawals refinanced their mortgage loan for a home located at 28016 Ridgebrook Court in Rancho Palos Verdes, California, with Morgan Stanley Private Bank, N.A.  PHH acted as Morgan Stanley Private Bank, N.A.'s agent and provided services for Morgan Stanley Private Bank, N.A. in processing and underwriting the loan.

115.   The Agrawals were referred to TRG for both title insurance (via TRG subsidiary Equity Title) and other settlement services (via TRG subsidiary TRG Services) in connection with the refinance.  The Agrawals trusted and relied that the referrals were lawful and not part of an anticompetitive kickback scheme.

116.   The Agrawals paid fees and other charges totaling approximately $1,233.50 to Equity Title and TRG Services for title insurance and other settlement services, respectively, in conjunction with the settlement of the mortgage loan.

117.   After closing, the Agrawals' new loan was serviced by PHH.

118.   The Agrawals were **not** notified in connection with this transaction that PHH had been contractually obligated to refer clients to Equity Title and TRG Services for title and other settlement services, and to cause Morgan Stanley Private Bank, N.A. to refer all title insurance and settlement services to TRG; and the Agrawals were not aware of these arrangements.

119.   The Agrawals were also **not** notified and not aware of the true nature of the business arrangements and affiliations involving PHH, Equity Title, and TRG Services, as explained herein.

120.   The Agrawals were given no reason to suspect that these entities were not acting independently from one another, and were not acting in the Agrawals'

FOURTH AMENDED CLASS ACTION COMPLAINT

best interests, when Defendants referred the Agrawals to other Defendants for settlement services. Instead, the Agrawals trusted that each of these referrals was lawful and had no idea that they were being victimized by Defendants' anti-competitive kickback scheme.

121. As a result of the referrals described above, which were made in conformity with the illegal scheme described herein between PHH and Realogy, the Agrawals paid more for settlement services than they would have paid in the absence of the anticompetitive referrals and kickbacks.

## CLASS ACTION ALLEGATIONS

122. Plaintiffs bring this action on behalf of themselves and the following Class pursuant to Rules 23(a), (b)(2), (b)(3), and (c)(5) of the Federal Rules of Civil Procedure:

> *All borrowers who, on or after November 25, 2014 and on or before November 25, 2015, closed on any mortgage loan originated by PHH Corporation, PHH Mortgage Corporation, PHH Home Loans LLC, or their affiliates (including loans where PHH Mortgage Corporation provided origination services on behalf of any PLS Partners), where Title Resource Group LLP or its affiliates provided title insurance or other Settlement Services in connection with the loan.*

123. Excluded from the Class are Defendants; Defendants' subsidiaries and affiliates; any entity in which any Defendant has a controlling interest; any and all employees of Defendants; any successor or assign of the Defendants; governmental entities; the judge to whom this case is assigned and his or her immediate family; and all persons who make a timely election to be excluded from the Class.

124. Plaintiffs reserve the right to revise the definition of the Class based upon information learned through discovery.

125. *Numerosity*. Pursuant to FRCP 23(a)(l), the members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiffs, but Plaintiffs are informed and believe that there are not less than

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

hundreds of thousands of members of the Class.  The precise number and identity of Class members is ascertainable from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

126.   *Commonality and Predominance.*  Pursuant to FRCP 23(a)(2) and 23(b)(3), this action involves common questions of law and fact, which predominate over any individual questions with respect to Class members, including, without limitation:

 a. Whether Defendants engaged in the conduct alleged in this Complaint;

 b. The nature of the relationships of Defendants to one another;

 c. The nature of the benefits exchanged by PHH and Realogy under the terms of the SRA and otherwise;

 d. Whether Defendants gave and accepted benefits in exchange for the referral of settlement services, and if so, the nature and extent of such benefits and services; and

 e. Whether Defendants' relationships with each other and exchange of benefits violated section 8 of RESPA

127.   *Typicality.*  Pursuant to FRCP 23(a)(3), the claims of the named Plaintiffs are typical of the claims of the Class because, among other things, all members of the Class executed mortgage loans and paid similar, if not identical, amounts for title insurance and other settlement services based on the allegations in this Complaint.  Furthermore, the Dodges' and Agrawals' claims are typical of the claims of the Class because, among other things, all members of the Class obtained mortgage loans from or through PHH Home Loans or one of the PLS Partners and received similar, if not identical, notices that failed to adequately state the full nature of the relationships between the lender and the provider of title insurance and other settlement services.

128. *Adequacy.*  Pursuant to FRCP 23(a)(4), Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members.  Likewise, Plaintiffs' counsel is competent and experienced in prosecuting complex class action cases.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

129. *Superiority.*  Pursuant to FRCP 23(b)(3), a class action is the best available method to adjudicate this controversy.  This action involves common questions of fact and law, as described above.  Moreover, prosecution of the action will require targeted discovery on complex issues and could not practically be pursued by individual litigants.  Plaintiffs and the other Class members' damages are relatively small compared to the burden and expense that would be required to individually litigate the claims.  In addition, individual litigation of Class members' claims would be impracticable and unduly burdensome to the court system and has the potential to lead to inconsistent results based on identical conduct.  A class action provides the benefits of a single adjudication, economy of scale, and comprehensive supervision of a single court.

## CAUSE OF ACTION

### Violation of § 8(a) of the Real Estate Settlement Procedures Act,
### 12 U.S.C. § 2607(a)

130.   Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 120, as though fully incorporated herein.

131.   12 U.S.C. § 2607(a) provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person."

132.   As alleged above, under the PLS model, PHH directed the PLS Partners – for whom PHH manages all aspects of the mortgage process – to refer title

FOURTH AMENDED CLASS ACTION COMPLAINT

insurance and other settlement services to TRG without notifying consumers of the existence of PHH's affiliation with TRG, nor the fact that PHH was required to cause the PLS Partners to refer title insurance and other settlement services to TRG under the terms of the SRA. Every person who obtained a federally related mortgage loan from a PLS Partner was referred to TRG for title insurance and other settlement services.

133. Similarly, PHH and Realogy created a joint venture called PHH Home Loans, which was and is a sham venture carefully engineered by the former affiliates to facilitate and disguise the payment of unlawful referral fees and kickbacks in exchange for the referral of title insurance and other settlement services to Realogy's subsidiary, TRG. PHH and Realogy, through their subsidiaries, hold 50.1% and 49.9%, respectively, of the membership interests in PHH Home Loans; and PHH, through its subsidiary, is the sole Managing Member in control of the venture. PHH was required under the SRA to refer, and to cause its subsidiaries to refer, all title insurance and settlement services to TRG. Class members who obtained a federally related mortgage loan from PHH Home Loans were referred to TRG for title insurance and other settlement services.

134. Therefore, under the PLS model, Realogy and PHH entered into "an agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan" shall be referred to TRG, and under the PHH Home Loans model, Realogy, PHH, and PHH Home Loans entered into "an agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan" shall be referred to TRG.

135. As a result of the unlawful referral to TRG, the Dodges, Agrawals and each member of the Class paid fees and other charges for title insurance and other settlement services to TRG.

FOURTH AMENDED CLASS ACTION COMPLAINT

136.   Under PLS model, Realogy, PHH, and TRG created and received a disguised "fee, kickback, or thing of value" for the referrals made via the PLS Partners, in the form of, among other things, the right of first refusal over the purchase of the servicing rights to mortgages originated by PHH Home Loans, along with the economic benefits resulting from obtaining these servicing rights.  Under the PHH Home Loans model, Realogy, PHH, and TRG created and received a "fee, kickback, or thing of value" by making PHH Home Loans the exclusively recommended mortgage lender for Realogy's vast real estate brokerage network; granting PHH Home Loans the exclusive right to use the Century 21, Coldwell Banker, and ERA trade names to market its mortgage products; providing PHH Home Loans access to consumers attending trade shows, conventions, and conferences organized by Realogy's brokerages; giving PHH a right of first refusal for the purchase of the mortgage servicing rights for PHH Home Loan originated mortgages; and providing the other benefits to PHH alleged above.

137.   As alleged herein, these fees, kickbacks and things of value were made pursuant to PHH and Realogy's agreement, under the SRA and otherwise, that title insurance and other settlement services shall be referred to TRG, and that PHH shall cause each PLS Partner to refer title insurance and other settlement services to TRG in violation of 12 U.S.C. § 2607(d).

138.   12 U.S.C. § 2607(d) provides that "[a]ny person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service."

139.   As alleged herein, the Dodges, Agrawals and each member of the Class paid fees and other charges to TRG for title insurance and other settlement services as a customer of a PLS Partner and/or PHH Home Loans.

- 35 -

140.   Therefore, Defendants are jointly and severally liable to the Dodges, Agrawals and the Class for three times the amount of all fees and other charges paid to TRG for title insurance and other settlement services, for each federally related mortgage loan that the Dodges, Agrawals and the Class obtained from a PLS Partner and/or PHH Home Loans.

## **PRAYER FOR RELIEF**

141.   WHEREFORE, Plaintiffs, individually and on behalf of members of the proposed Class, respectfully request that the Court enter an order and judgment against Defendants as follows:

a)   An order certifying the proposed Class;

b)   An order appointing Plaintiffs' counsel as Class Counsel for the proposed Class;

c)   An order awarding treble damages to Plaintiffs and all Class members pursuant to 12 U.S.C. § 2607(d)(2);

d)   An order awarding costs and attorneys' fees to Plaintiffs' Class Counsel pursuant to 12 U.S.C. § 2607(d)(5);

e)   An order requiring Defendants to pay pre-judgment and post-judgment interest on any amount awarded; and

f)   Such other relief that the Court deems appropriate.

DATED: July 31, 2017

By:   /s/ Evan C. Borges
Alan A. Greenberg
Wayne R. Gross
Evan C. Borges
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1750
Costa Mesa, CA 92626
Telephone:  (949) 383-2800
Facsimile:   (949) 383-3801

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/ Daniel S. Robinson

Daniel S. Robinson
Wesley K. Polischuk
**ROBINSON CALCAGNIE, INC.**
19 Corporate Plaza Drive
Newport Beach, California 92660
Telephone:  (949) 720-1288
Facsimile:   (949) 720-1292

*Attorneys for Plaintiffs Sheri Dodge, Neil Dodge, Ram Agrawal, Sarita Agrawal and All Others Similarly Situated*

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

1

## **DEMAND FOR JURY TRIAL**

2      Plaintiffs, individually and on behalf of all members of the proposed Class,

3   hereby demand a jury trial for all claims so triable.

4   DATED: July 31, 2017

5                                               By:   /s/ Evan C. Borges

6                                                     Alan A. Greenberg
                                                      Wayne R. Gross
7                                                     Evan C. Borges
8                                                     **GREENBERG GROSS LLP**
                                                      650 Town Center Drive, Suite 1750
9                                                     Costa Mesa, CA 92626
                                                      Telephone:  (949) 383-2800
10                                                    Facsimile:   (949) 383-3801

11
                                                      /s/ Daniel S. Robinson
12                                                    Daniel S. Robinson
13                                                    Wesley K. Polischuk
                                                      **ROBINSON CALCAGNIE, INC.**
14                                                    19 Corporate Plaza Drive
15                                                    Newport Beach, California 92660
                                                      Telephone: (949) 720-1288
16                                                    Facsimile:   (949) 720-1292

17
                                                      *Attorneys for Plaintiffs Sheri Dodge, Neil*
18                                                    *Dodge, Ram Agrawal, Sarita Agrawal and*
19                                                    *All Others Similarly Situated*

20

21

22

23

24

25

26

27

28

- 38 -

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 31, 2017, I caused to be filed the foregoing FOURTH AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF § 8(a) OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2607(a) (JURY TRIAL DEMANDED). This document is being filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: July 31, 2017                                  */s/ Daniel S. Robinson*
                                                       Daniel S. Robinson

FOURTH AMENDED CLASS ACTION COMPLAINT

1294965.1