1
2
3
4
5
6
7
8
**UNITED STATES DISTRICT COURT**

9
**CENTRAL DISTRICT OF CALIFORNIA**

10

11
SHERI DODGE, et al., individually and
on behalf of all others similarly situated,

12
Plaintiffs,

13
v.

14
PHH CORPORATION, et al.,

15
Defendants.

16

Case No. SA CV 15-1973 FMO (AFMx)

**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, EXPENSES & SERVICE AWARDS**

17       Having reviewed and considered Plaintiffs' Motion for Entry of An Order Granting Final

18   Approval of Class Action Settlement Agreement, (Dkt. 144, "Motion"), and Plaintiffs' Motion for

19   Attorneys' Fees, Expenses and Service Awards, (Dkt. 143, "Fees Motion"), and the oral argument

20   presented during the final fairness hearing held on August 16, 2018, the court concludes as

21   follows.

22                                    **INTRODUCTION**

23       On November 25, 2015, Timothy L. Strader Sr. ("Strader") filed this action on behalf of

24   himself and all others similarly situated, against PHH Corporation, its subsidiaries and affiliates,

25   and Realogy Holdings Corp. and its subsidiaries and affiliates, asserting a claim for violation of

26   § 8(a) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(a).  (See Dkt. 1,

27   Complaint).  On December 10, 2015, Strader filed an amended complaint, adding Lester L. Hall,

28   Jr. ("Hall") as a named plaintiff, and asserting an additional claim under RESPA.  (See Dkt. 10,

Amended Class Action Complaint []).  After the court granted defendants' motion to dismiss with leave to amend, (see Dkt. 62, Court's Order of April 5, 2016), Strader and Susan M. Strader, as trustees of the T/S Strader Family Trust ("Straders"), and Hall, filed a Second Amended Class Action Complaint ("SAC"), (see Dkt. 67, SAC), and pursuant to a stipulation, filed a Third Amended Complaint ("TAC").  (See Dkt. 74, TAC; Dkt. 73, Court's Order of May 12, 2016).

On October 6, 2016, the court denied defendants' motion to dismiss the TAC.  (See Dkt. 90, Court's Order of October 6, 2016, at 2).  Defendants filed their Answers to the TAC on October 20, 2016.  (See Dkts. 91-93).

The parties reached a settlement on May 19, 2017.  (Dkt. 140, Court's Order of January 29, 2018 ("Preliminary Approval Order" or "PAO") at 2).  The Straders and Hall agreed to settle their individual claims, and the parties stipulated to the filing of a Fourth Amended Complaint ("4AC").  (See id.).  The 4AC, the operative complaint, amended certain claims and added as named plaintiffs Sheri Dodge ("Sheri"), Neil Dodge ("Neil"), Ram Agrawal ("Ram"), and Sarita Agrawal ("Sarita") (collectively, "plaintiffs").  (See id.; Dkt. 115, 4AC).

On January 29, 2018, the court granted preliminary approval of the settlement, appointed KCC, LLC ("KCC") as settlement administrator, and directed KCC to provide notice to the class members.  (See Dkt. 140, PAO at 23-24).

Plaintiffs now seek:  (1) final approval of the settlement; (2) attorney's fees and costs; and (3) service awards for plaintiffs.  (See Dkt. 144, Motion; Dkt. 143, Fees Motion).

## **BACKGROUND**

I.  PLAINTIFFS' CLAIMS.

This case arises from allegations that PHH Corporation, PHH Broker Partner Corp., PHH Mortgage Corp., Realogy Intermediate Holdings LLC, Realogy Holdings Corp., Realogy Group LLC, Realogy Services Venture Partner LLC, Realogy Services Group LLC, Title Resource Group LLC ("TRG"), West Coast Escrow Company, TRG Services Escrow, Inc., Equity Title Company, NRT LLC, PHH Home Loans, LLC ("PHH Home Loans"), RMR Financial, LLC, and NE Moves Mortgage LLC (collectively, "defendants") violated § 8(a) of RESPA by (1) paying and receiving kickbacks, referral fees, or other things of value in connection with the referral of title insurance

1   and other settlement services to TRG and its affiliates, and (2) operating PHH Home Loans as

2   an improper "Affiliated Business Arrangement" ("ABA").[1]  (See Dkt. 115, 4AC; Dkt. 140, PAO).

3         Plaintiffs allege that following the restructuring of Cendant Corporation ("Cendant') in 2005,

4   the parent of all the PHH and Realogy businesses, PHH was "spun off" from Cendant, but

5   thereafter "PHH and Cendant entered into a series of contractual arrangements that reconstituted

6   and maintained the close affiliations that existed prior to the spin-off." (Dkt. 115, 4AC at ¶ 4).

7   "When thoroughly analyzed and stitched together, this seemingly disparate set of corporate-level

8   commitments, preferences, exclusivities, and referrals – as implemented at the consumer level

9   – had the design and effect of guiding and pushing unwitting consumers through the home-buying

10  process in a manner that caused the consumers not to use competing settlement service

11  providers." (Id. at ¶ 5).

12        According to plaintiffs, defendants executed the scheme in two ways.  First, PHH and

13  Realogy created an ABA called PHH Home Loans, "which was and is a sham venture carefully

14  engineered to facilitate and disguise the payment of unlawful referral fees and other kickbacks

15  and things of value in exchange for referrals of settlement services to and among the Defendants,

16  including referrals of title insurance and other settlement services to Realogy's subsidiary," TRG.

17  (Dkt. 115, 4AC at ¶ 7).  PHH also entered into a Strategic Relationship Agreement ("SRA") with

18  Cendant and, prior to October 21, 2015, PHH was bound under the SRA to refer all title insurance

19  and settlement services to TRG.  (Id. at ¶ 8).  "In return, PHH received a variety of monetary and

20  nonmonetary referral fees and kickbacks via its ownership and control of the sham ABA and

21  PHH's intricate relationship with Realogy." (Id.).  "Pursuant to the SRA, PHH Home Loans is the

22  exclusively recommended mortgage lender for Realogy's vast real estate brokerage network,

23  which is operated by Realogy's subsidiary, NRT LLC ("NRT"), and includes such recognizable

24  brands as Coldwell Banker, Sotheby's International Realty, ZipRealty, The Corcoran Group, and

25  Citi Habitats." (Id. at ¶ 9).

26

27  _____

28        [1]  Capitalization, emphasis, internal alteration marks, and internal quotation marks may be
     altered or omitted without notation in record citations.

1        Second, under a Private Label Solutions ("PLS") model, "in which PHH manages all

2 aspects of the mortgage process for various banking institutions, including, but not limited to,

3 Morgan Stanley, Merrill Lynch (a subsidiary of and trade name for Bank of America, N.A.), HSBC,

4 and UBS (collectively, the 'PLS Partners') – PHH directs the PLS Partners to refer title insurance

5 and other settlement services to TRG (and/or its affiliates) without notifying consumers of the

6 existence of PHH's affiliation with TRG, nor the fact that PHH was required to cause the PLS

7 Partners to refer title insurance and other settlement services to TRG under the terms of the SRA.

8 Similar to the PHH Home Loans customers, these unknowing consumers were charged by TRG

9 for the referred services." (Dkt. 115, 4AC at ¶ 11) (emphasis omitted).  PHH also received

10 kickbacks and fees for the referrals made via the PLS Partners, in the form of, among other

11 things, the right of first refusal over the purchase of the servicing rights to mortgages originated

12 by PHH Home Loans, along with the economic benefits resulting from these servicing rights. (See

13 id. at ¶ 12).

14        Plaintiffs "seek redress for all consumers who were victimized by Defendants' deceptive

15 and collusive practices, which have suppressed competition in the market for settlement services."

16 (Dkt. 115, 4AC at ¶ 15).  They seek damages encompassing all amounts paid to defendants as

17 fees and other charges for settlement services, and treble damages.  (See id.).

18        During the litigation of this action, which included the filing of several motions to dismiss

19 and amended complaints, (see Dkt. 140, PAO at 4), and following some discovery, the parties

20 attended a mediation session with Viggo Boserup ("Boserup") on January 31, 2017.  (See id.).

21 While the parties did not reach an agreement at that mediation, they continued to negotiate over

22 discovery and other issues, and attended a settlement conference with former Magistrate Judge

23 Gandhi in May 2017, where the case was settled.  (See id.).

24 II.    SETTLEMENT AGREEMENT.

25        The parties defined the settlement class as "all borrowers who, on or after November 25,

26 2014 and on or before November 25, 2015, (1) closed on any mortgage loan originated by PHH

27 Corporation, PHH Mortgage Corporation, PHH Home Loans, LLC, or their affiliates (including

28 loans where PHH Mortgage Corporation provided origination services on behalf of any PLS

1    Partners), and (2) paid title-, escrow-, or closing-related charges in connection with that mortgage

2    loan to Title Resource Group LLC or its affiliates.  Excluded from the Class are borrowers who

3    exclude themselves by submitting a Request For Exclusion that is accepted by the Court."  (Dkt.

4    134, Amended Stipulation of Settlement ("Settlement Agreement") at § IV.A.6).

5         The relief available to the class, which involves 32,219 transactions, will come from a non-

6    reversionary $17,000,000 settlement fund, (see Dkt. 134, Settlement Agreement at §§ IV.D.1,

7    IV.D.10; Dkt. 140, PAO at 5; Dkt. 144-3, Declaration of Orlando Castillejos ("Castillejos Decl.") at

8    ¶ 3), after deductions for attorney's fees and costs, the costs of the claims administrator, any class

9    representative service awards and taxes. (See Dkt. 134, Settlement Agreement at § IV.D.13; Dkt.

10   140, PAO at 5).

11        The class notice included the class member's "Amount Paid" figure, which reflects the

12   amount the class member paid in settlement services as reflected in defendants' records.  (See

13   Dkt. 134, Settlement Agreement at § IV.D.16(a); Dkt. 144-3, Castillejos Decl. at ¶ 6 & Exhibit

14   ("Exh.") A ("Notice") at 4; Dkt. 140, PAO at 5).  If the class member did not dispute the Amount

15   Paid figure, he or she was not required to do anything to receive a monetary payment from the

16   settlement fund. (See Dkt. 144-3, Exh. A, Notice at 1, 4; Dkt. 140, PAO at 5).  However, if a class

17   member disputed the Amount Paid figure, he or she could submit a claim form with supporting

18   documentation setting forth the settlement charges the class member paid.  (See Dkt. 134,

19   Settlement Agreement at § IV.D.16(a); Dkt. 144-3, Exh. A, Notice at 1, 4; Dkt. 140, PAO at 5).

20   KCC was tasked with reviewing and determining whether the amount stated in the Claim Form

21   will be accepted or denied.  (See Dkt. 134, Settlement Agreement at §§ IV.D.16.(a)-(b); Dkt. 140,

22   PAO at 5).

23   III.  NOTICE TO THE CLASS.

24        KCC, the court-appointed settlement administrator, implemented the notice program

25   previously approved by the court. (See Dkt. 144-1, Plaintiffs' Memorandum in Support of Motion

26   for Final Approval of Class Action Settlement ("Memo") at 10-11; Dkt. 144-3, Castillejos Decl. at

27   ¶¶ 3-9; Dkt. 140, PAO at 21-22 (approving notice program)).  On February 12, 2018, after

28   checking and updating addresses via a National Change of Address ("NCOA") search, KCC sent

1  Notice to 32,219 class members via U.S. Mail.  (See Dkt. 144-3, Castillejos Decl. at ¶¶ 3, 6 & Exh.

2  A (Notice)).   Including re-mailed Notices, KCC mailed, as of May 31, 2018, 31,526 Notices

3  (97.75%).  (See id. at ¶¶ 7-9).  In addition to the mailed Notice, KCC carried out the court-

4  approved    notice   program   via   a   settlement   website.   (See   id.  at   ¶  4

5  (www.realestatefeesettlement.com); Dkt. 140, PAO at 22).  Finally, KCC established a case-

6  specific toll-free telephone number that class members could call and listen to answers to

7  frequently asked questions or request a claim form and notice.  (See Dkt. 144-3, Castillejos Decl.

8  at ¶ 5).

9       As of May 31, 2018, KCC had received two requests for exclusion and no objections.  (See

10  Dkt. 144-3, Castillejos Decl.  at ¶¶ 10-11; see, generally, Dkt. (no objections filed with the court)).

11  The deadline for requesting exclusion or objecting to the settlement was May 14, 2018.  (See Dkt.

12  144-3, Castillejos Decl. at ¶¶ 10-11)

13                    **LEGAL STANDARD**

14       Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a

15  certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The

16  primary concern of [Rule[2] 23(e)] is the protection of th[e] class members, including the named

17  plaintiffs, whose rights may not have been given due regard by the negotiating parties."  Officers

18  for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert.

19  denied, 459 U.S. 1217 (1983).  Whether to approve a class action settlement is "committed to the

20  sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th

21  Cir.), cert. denied, 506 U.S. 953 (1992), who must examine the settlement for "overall fairness."

22  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).  The court may not "delete, modify

23  or substitute certain provisions.  The settlement must stand or fall in its entirety."  Id. (internal

24  quotation marks and citation omitted).

25       In order to approve a settlement in a class action, the court must conduct a three-step

26  inquiry.  First, it must assess whether the notice requirements under the Class Action Fairness

27  _____

28       [2] All "Rule" references are to the Federal Rules of Civil Procedure.

1   Act ("CAFA") have been met.  See 28 U.S.C. § 1715(d).  Second, it must determine whether the

2   notice requirements of Rule 23(c)(2)(B) have been satisfied.  Finally, it must conduct a hearing

3   to determine whether the settlement agreement is "fair, reasonable, and adequate."  See Fed. R.

4   Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule

5   23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012)

6   (conducting three-step inquiry).

7          In determining whether a settlement is fair, adequate, and reasonable, the court must

8   weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk,

9   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

10  status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

11  completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

12  presence of a governmental participant; and (8) the reaction of the class members of the

13  proposed settlement."  In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir.

14  2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

15         However, when "a settlement agreement is negotiated prior to formal class certification,

16  consideration of these eight . . . factors alone is not enough to survive appellate review."

17  Bluetooth, 654 F.3d at 946 (emphasis in original).  This is because, "[p]rior to formal class

18  certification, there is an even greater potential for a breach of fiduciary duty owed the class during

19  settlement."  Id.  District courts, therefore, also must determine "that the settlement is not the

20  product of collusion among the negotiating parties."  Id. at 947 (internal quotation and alteration

21  marks omitted).  In making that determination, courts should look for signs of collusion, including

22  "(1) when counsel receive a disproportionate distribution of the settlement, or when the class

23  receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties

24  negotiate a `clear sailing' arrangement providing for the payment of attorneys' fees separate and

25  apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to

26  defendants rather than be added to the class fund[.]"  Id. (internal quotation marks and citations

27  omitted).

28

7

**DISCUSSION**

I.     FINAL APPROVAL OF CLASS SETTLEMENT.

    A.     Class Action Fairness Act.

    CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice, which must include, among other things, "any proposed or final notification to class members[,]" and "any proposed or final class action settlement[.]" 28 U.S.C. §§ 1715(b)(3) & (4). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. See id. at § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]").

    Here, defendants provided CAFA notice on September 1, 2017 and November 10, 2017. (See Dkt. 144-1, Memo at 14; Dkt. 144-4, Declaration of Michael Y. Kieval at ¶¶ 2-7; Dkt. 144-5, Declaration of Peter C. Magnuson at ¶¶ 2-6 & Exhs. 1-2). Counsel for defendants confirmed at the final fairness hearing that there have been no objections to the settlement from the state and federal officials that received the CAFA notices.

    B.     Class Certification.

    In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (See Dkt. 140, PAO at 10-16, 23). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C.     Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice.  (See Dkt. 140, PAO at 21-22).  As discussed above, the notice program has been implemented by KCC.  See supra Background at § III.; (Dkt. 144-3, Castillejos Decl. at ¶¶ 3-12). Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement.  (See Dkt. 140, PAO at 21-22; see also Dkt. 144-3, Castillejos Decl. at ¶¶ 3-12 & Exh. A).

D.     Whether the Class Settlement is Fair, Adequate and Reasonable.

1.     **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]."  Adoma, 913 F.Supp.2d at 975.  "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required."  Id. at 976.

Here, in granting preliminary approval of the settlement, the court recognized that the "risks of continued litigation [were] significant" and that "[w]eighed against those risks, . . . coupled with the costs and delay associated with continued litigation" the "benefits to the class" were within the range of reasonableness.  (See Dkt. 140, PAO at 18).  Settlement affords class members

1   monetary benefits in the face of a vigorous defense and substantial delay.  (See Dkt. 144-1,
2   Memo at 16-17).  Under the circumstances, the court finds it significant that the class members
3   will receive "immediate recovery by way of the compromise to the mere possibility of relief in the
4   future, after protracted and expensive litigation."  Nat'l Rural Telecommc'ns. Coop. v. DIRECTV,
5   Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  In short, the court finds that this factor supports a
6   finding that the settlement is fair, adequate, and reasonable.

7                    2.    **The Risk of Maintaining Class Action Status Through Trial**.

8          In its order granting preliminary approval, the court certified the class pursuant to Rule
9   23(b)(3).  (See Dkt. 140, PAO at 10-16, 23).  In deciding whether to certify the class for settlement
10  purposes, the court determined that the requirements of Rule 23 for settlement purposes have
11  been met.  (See id.); Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248
12  (1997) ("Confronted with a request for settlement-only class certification, a district court need not
13  inquire whether the case, if tried, would present intractable management problems[.]").  Nothing
14  has been put forth to challenge or otherwise undermine the court's previous order certifying the
15  class for settlement purposes under Rule 23(e).  See In re Apollo Grp. Inc. Sec. Litig., 2012 WL
16  1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the
17  Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").  Still,
18  defendant could challenge the definition of the class at trial or on appeal.  See Parks v. Portnoff
19  Law Associates, 243 F.Supp.2d 244, 252 (E.D. Pa. 2003).  Accordingly, this factor weighs in favor
20  of approving the settlement.

21                   3.    **The Amount Offered in Settlement**.

22         "[T]he very essence of a settlement is compromise, a yielding of absolutes and an
23  abandoning of highest hopes."  Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir.
24  1998) (internal quotation marks omitted).  In granting preliminary approval of the settlement, the
25  court concluded that the settlement benefits were fair, adequate, and reasonable in light of the
26  litigation risks in the case.  (See Dkt. 140, PAO at 18-19).  Accordingly, this factor also weighs in
27  favor of final approval.

28

4.     **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecommc'ns. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527.  The court previously examined these factors at length, noting that the parties had conducted lengthy and extensive discovery, (see Dkt. 140, PAO at 17-18), and "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id. at 18), which enabled them to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.).  In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions.  See Nat'l Rural Telecommc'ns, 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted).  This factor also supports approval of the settlement.

5.     **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.  This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecommc'ns, 221 F.R.D. at 528 (internal quotation marks and citation omitted).  The court has previously noted that class counsel are adequate.  (See Dkt. 140, PAO at 13-14).  Moreover, class counsel have concluded that the settlement is "fair, reasonable and adequate[, and] is in the best interests of Plaintiffs and . . . Class Members."  (Dkt. 123-7, Declaration of Daniel S. Robinson in Support of Motion for Preliminary Approval of Class Action Settlement[] ("Robinson Decl.") at ¶ 31; see also Dkt. 144-1,

1    Memo at 19).  Thus, this factor also supports approval of the settlement.

2               **6.**    **The Presence of a Governmental Participant**.

3        There is no government participant in this matter.  Accordingly, this factor is inapplicable.

4    See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL

5    1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this

6    factor inapplicable to the analysis).

7               **7.**    **The Reaction of Class Members to the Proposed Settlement**.

8        "It is established that the absence of a large number of objections to a proposed class

9    action settlement raises a strong presumption that the terms of a proposed class settlement action

10    are favorable to the class members." Nat'l Rural Telecommc'ns, 221 F.R.D. at 529.  Here, the

11    reaction of the class has been very positive.  Significantly, there have only been two requests for

12    exclusion and no objections.  (See Dkt. 144-1, Memo at 20; Dkt. 144-3, Castillejos Decl. at ¶¶ 10-

13    11; see, generally, Dkt.).  The lack of objections and limited requests for exclusion support

14    approval of the settlement.  See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14

15    (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class

16    members – less than one percent – opted out, and there were no objections to the settlement);

17    Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when

18    less than two percent of the class members opted out and no objections were received); Barcia

19    v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor

20    of approval of settlement when there were only 56 opt outs and no objections out of the 2,385

21    class members).

22        E.    Cy Pres Designee.

23        Courts may approve cy pres distributions if there is "a driving nexus between the plaintiff

24    class and the cy pres beneficiaries." Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012).

25    A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the

26    interests of the silent class members, and must not benefit a group too remote from the plaintiff

27    class[.]" Id. (internal quotation marks and citations omitted).

28        The settlement provides that any amount remaining in the net settlement fund following

1   initial distribution of settlement checks will be redistributed to class members who cashed their

2   initial distribution checks, unless the average check amount is less than $20.00. (See Dkt. 123-7,

3   Robinson Decl. at ¶ 24).  At that point, the remaining net settlement fund will be distributed to

4   Consumer Watchdog, the parties' proposed cy pres recipient.  (See id.; Dkt. 144-1, Memo at 9

5   n. 6).  Consumer Watchdog is "a respected non-profit group that advocates for taxpayer and

6   consumer interests." (See Dkt. 123-7, Robinson Decl. at ¶ 24).  The court is persuaded that there

7   is a driving nexus between the class and Consumer Watchdog.

8   II.    ATTORNEY'S FEES, COSTS AND SERVICE AWARDS.

9        The Settlement Agreement provides that defendants will not oppose class counsel's

10   request for an award of attorney's fees up to 30% of the Settlement Fund.  (See Dkt. 134,

11   Settlement Agreement at § IV.E.2).  Class counsel now seek such an award, which amounts to

12   $5.1 million.  (See Dkt. 143, Fees Motion at 1; Dkt. 143-1, Plaintiffs' Memorandum in Support of

13   Motion for Attorneys' Fees, Expenses and Service Awards ("Fees Memo") at 1, 9, 23).

14        A.    Attorney's Fee Award.

15        Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable

16   attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

17   In general, courts have discretion to choose among two different methods for calculating a

18   reasonable attorney's fee award.  See Bluetooth, 654 F.3d at 941.  Under the "percentage-of-the-

19   fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage

20   of the fund sufficient to provide class counsel with a reasonable fee." Hanlon, 150 F.3d at 1029.

21   This method is typically used when a common fund is created.  See Bluetooth, 654 F.3d at 942.

22        Alternatively, under the lodestar method, the court multiplies the number of reasonable

23   hours expended by a reasonable hourly rate.  See Hanlon, 150 F.3d at 1029.  Once the lodestar

24   has been determined, the "figure may be adjusted upward or downward to account for several

25   factors including the quality of the representation, the benefit obtained for the class, the

26   complexity and novelty of the issues presented, and the risk of nonpayment." Id.  The lodestar

27   method is typically utilized when the relief obtained is "not easily monetized," such as when

28   injunctive relief is part of the settlement.  See Bluetooth, 654 F.3d at 941.  The court's discretion

1    in choosing between these two methods "must be exercised so as to achieve a reasonable result."

2    Id. at 942; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331

3    F.Appx. 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is]

4    guided by the fundamental principle that fee awards out of common funds be reasonable under

5    the circumstances.") (internal quotation marks and emphasis omitted).

6         Under the circumstances here, the court is persuaded that the percentage-of-fund method

7    is the most appropriate so as to achieve a reasonable result in this case.  The Ninth Circuit "has

8    established 25% of the common fund as a benchmark award for attorneys fees."  Hanlon, 150

9    F.3d at 1029.  Courts consider the following factors when determining the benchmark percentage

10   to be applied in a given case: (1) the results achieved for the class; (2) the risk of litigation; (3) the

11   skill required and quality of work; (4) the contingent nature of the fee; and (5) awards made in

12   similar cases."  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1046 (9th Cir. 2002).  The actual

13   percentage will vary depending on the facts of each case, but in "most common fund cases, the

14   award exceeds that benchmark."  Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 491

15   (E.D. Cal. 2010) (internal quotation marks omitted).

16              **1.    The Results Obtained for the Class.**

17        "The result achieved is a significant factor to be considered in making a fee award."  In re

18   Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S.

19   424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success

20   obtained").  Here, unless a class member challenged the Amount Paid figure reflected in the

21   Notice, class members were not required to do anything to receive a monetary payment from the

22   settlement fund.  (See Dkt. 144-3, Exh. A, Notice at 1, 4; Dkt. 140, PAO at 5).  According to

23   plaintiffs, the class will receive between 15% and 20% of the amount they paid for the services

24   at issue in this litigation, which is estimated to be between $0.75 and $17,412.91.[3]  (See Dkt. 143-

25   1, Fees Memo at 1; see also Dkt. 140, PAO at 18).  Moreover, the court previously found that the

26

27   _____

28        [3] Plaintiffs note that the lowest amount paid by a class member is $5.00, but that there are
     only three class members that paid less than $100.00.  (See Dkt. 143-1, Fees Memo at 1 n. 1).

1  settlement was fair given the substantial litigation risks in this case.  (See Dkt. 140, PAO at 18-19).

2  Accordingly, this factor weighs in favor of class counsel's fee request.

3              **2.     The Risk of Litigation.**

4      "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a

5  case involving complicated legal issues, is a significant factor in the award of fees."  In Re

6  Omnivision Technologies, Inc., 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008).  As discussed

7  above, see supra at § I.D.1., and in the court's prior order, the risks of continued litigation were

8  significant.  See Vizcaino, 290 F.3d at 1048 (risk of dismissal or loss on class certification is

9  relevant to evaluation of a requested fee).

10             **3.     The Skill Required and Quality of Work.**

11     The "prosecution and management of a complex national class action requires unique legal

12 skills and abilities."  Omnivision, 559 F.Supp.2d at 1047 (internal quotation marks omitted).  Here,

13 class counsel are experienced class action litigators who have been appointed class counsel in

14 other consumer class actions.  (See Dkt. 140, PAO at 13-14).  This factor weighs in favor of

15 granting the requested fee.

16             **4.     The Contingent Nature of the Fee.**

17     "The importance of assuring adequate representation for plaintiffs who could not otherwise

18 afford competent attorneys justifies providing those attorneys who do accept matters on a

19 contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."  Knight v.

20 Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009).  Here, class counsel took this case

21 on a contingent basis, foregoing other work and entailing significant out-of-pocket expenses,

22 incurring a lodestar of $3,618,755.  (See Dkt. 143-1, Fees Memo at 14-15; Dkt. 143-2, Declaration

23 of Daniel S. Robinson in Support of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service

24 Awards ("Robinson Fees Decl.") at ¶¶ 3-4; Dkt. 143-3, Declaration of Evan C. Borges in Support

25 of Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards ("Borges Decl.") at ¶¶ 4-5,

26 25).  In short, this factor also supports the requested fees.

27             **5.     Awards Made in Similar Cases.**

28     Although the requested fee award is above the Ninth Circuit's benchmark, see Hanlon, 150

1  F.3d at 1029, based on the results achieved, the court finds that the requested amount is within

2  the range awarded in consumer class actions.  See Spann v. J.C. Penney Corp., 211 F.Supp.3d

3  1244, 1261-1265 (C.D. Cal. 2016) (awarding 27% of settlement amount under California law);

4  Vandervort v. Balboa Capital Corp., 8 F.Supp.3d 1200, 1210 (C.D. Cal. 2014) (approving an

5  award of 33% of settlement fund for fees and costs in a Telephone Consumer Protection Act

6  case); see also Vasquez, 266 F.R.D. at 491 (noting that in "most common fund cases, the award

7  exceeds th[e] benchmark").

8        Consideration of the foregoing factors supports class counsel's request for attorney's fees

9  in the amount of 30% of the settlement fund, or $5.1 million.  The court, therefore, is satisfied that

10  a lodestar "cross-check" is not required.  See Craft v. City of San Bernardino, 624 F.Supp.2d

11  1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some

12  cases is not a useful reference point.").  In sum, a fee award of 30% out of the settlement fund

13  ($5.1 million) established by the Settlement Agreement is fair and reasonable.

14        B.    Costs.

15        Class counsel seek $36,704.82 in litigation expenses.  (See Dkt. 143-1, Fees Memo at 1,

16  21-23; Dkt. 143-2, Robinson Fees Decl. at ¶¶ 23-24; Dkt. 143-3, Borges Decl. at ¶¶ 24-25 ).  The

17  court finds that the costs incurred by class counsel over the course of this litigation are

18  reasonable, and therefore awards a total of $36,704.82 in costs.

19        C.    Class Representative Service Awards.

20        "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs,

21  are eligible for reasonable incentive payments."  Staton, 327 F.3d at 977; see Wren, 2011 WL

22  1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are

23  eligible for reasonable incentive payments, also known as service awards.").  Here, plaintiffs

24  request that the court grant a service award in the amount of $2,500 to each class representative.

25  (See Dkt. 143-1, Fees Memo at 22-23).

26        In its order granting preliminary approval of the settlement, the court undertook a thorough

27  examination of the fairness and adequacy of the service awards at issue, applying the careful

28  scrutiny required in this Circuit.  (See Dkt. 140, PAO at 20-21); see also Radcliffe v. Experian Info.

1  Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize
2  carefully the awards so that they do not undermine the adequacy of the class representatives").
3  Based on its review of the record, the court determined that an award of $2,500 for each class
4  representative was presumptively reasonable and did not create a conflict of interest between
5  named plaintiffs and absent class members. (See Dkt. 140, PAO at 20-21).  The court therefore
6  concludes that the requested service payments are fair and reasonable, and is hereby approved.

7                                              **CONCLUSION**

8           Based on the foregoing, IT IS ORDERED THAT:

9           1.   Plaintiffs' Motion for Entry of An Order Granting Final Approval of Class Action
10  Settlement Agreement **(Document No. 144)** is **granted** as set forth herein.

11          2.   The court hereby **grants final approval** to the parties' Settlement Agreement and
12  Release ("Settlement Agreement") (Document No. 134).  The court finds that the Settlement
13  Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and
14  informed negotiations, and treats all members of the class fairly.  The parties are ordered to
15  perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

16          3.  Plaintiffs' Motion for Attorneys' Fees, Expenses and Service Awards **(Document No.**
17  **143)** is **granted** as set forth herein.

18          4.   The settlement class is certified under Federal Rule of Civil Procedure 23(c):  All
19  borrowers who, on or after November 25, 2014 and on or before November 25, 2015, (1) closed
20  on any mortgage loan originated by PHH Corporation, PHH Mortgage Corporation, PHH Home
21  Loans, LLC, or their affiliates (including loans where PHH Mortgage Corporation provided
22  origination services on behalf of any PLS Partners), and (2) paid title-, escrow-, or closing-related
23  charges in connection with that mortgage loan to Title Resource Group LLC or its affiliates.
24  Excluded from the Class are borrowers who exclude themselves by submitting a Request For
25  Exclusion that is accepted by the Court.

26          5.   The form, manner, and content of the Class Notice meet the requirements of Federal
27  Rules of Civil Procedure 23(c)(2).

28          6.  Plaintiffs Sheri Dodge, Neil Dodge, Ram Agrawal, and Sarita Agrawal shall each be paid

1   a service payment of $2,500 in accordance with the terms of the Settlement Agreement.

2        7.  Class counsel shall be paid $5.1 million in attorney's fees, and $36,704.82 in costs in

3   accordance with the terms of the Settlement Agreement.

4        8.  The Claims Administrator, KCC, shall be paid for its fees and expenses in accordance

5   with the terms of the Settlement Agreement.

6        9.  The court approves the designation of Consumer Watchdog as the cy pres beneficiary

7   pursuant to the Settlement Agreement.

8        10.  All class members who did not validly and timely request exclusion from the settlement

9   have released their claims, as set forth in the Settlement Agreement, against any of the released

10  parties (as defined in the Settlement Agreement).

11       11.  Except as to any class members who have validly and timely requested exclusion, this

12  action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as

13  set forth herein and in the prior orders of the court.

14       12.  Without affecting the finality of this Order in any way, the court hereby retains

15  jurisdiction over the parties, including class members, for the purpose of construing, enforcing,

16  and administering the Order and Judgment, as well as the Settlement Agreement itself.

17       13.  Judgment shall be entered accordingly.

18  Dated this 27th day of August, 2018.

19

20                                          /s/
                                    _____
21                                    Fernando M. Olguin
                                    United States District Judge

22

23

24

25

26

27

28